# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

|  |  |
|---|---|
| KIMBERLY BROTHERS, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE TOWN OF MILLBURY, | ) |
| E. BERNARD PLANTE, in his Personal and | ) |
| Official Capacities, | ) |
| RICHARD BATES, in his Personal and Official | ) |
| Capacities, | ) |
| EDWARD MCGINN, in his Personal and Official | ) |
| Capacities, | ) |
|  | ) |
| Defendants. | ) |

**CIVIL ACTION
NO. 14-10122-TSH**

———————————————————————————

## MEMORANDUM OF DECISION ON DEFENDANTS THE TOWN OF MILLBURY AND E. BERNARD PLANTE'S MOTION TO DISMISS (Docket No. 15) AND DEFENDANTS RICHARD BATES AND EDWARD MCGINN'S MOTION TO DISMISS (Docket No. 17)
### August 14, 2014

HILLMAN, D.J.

## Introduction

Kimberly Brothers ("Brothers") brings suit against the Town of Millbury (the "Town"),

E. Bernard Plante ("Plante"), Richard Bates ("Bates"), and Edward McGinn ("McGinn")

(collectively "Defendants"). She alleges violations of 42 U.S.C. § 1983 for interference with her

right to Procedural Due Process (Count I), Substantive Due Process (Count II), and Equal

Protection (Count III), violations of the Massachusetts Civil Rights Act (Count IV), Civil

Conspiracy (Count VII), Intentional Infliction of Emotional Distress (Count VIII), Interference

with Advantageous Relations (Count X), and Defamation (Count XIII) against all Defendants.

1

Brothers also alleges Breach of Contract (Count V), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VI), Malicious Prosecution (Count IX), Wrongful Discharge in Violation of Public Policy (Count XI), and Negligent Hiring, Supervision, and Retention of Employees (Count XII) against the Town and Plante. Defendants have moved to dismiss all claims against them. For the reasons set forth below, those motions are granted in part and denied in part.

## Facts

Brothers is a full-time police officer for the town of Millbury and is covered under the Millbury Police Association Collective Bargaining Agreement (CBA). Article VII of the CBA provides that police officers are not to be disciplined or discharged "except for just cause."

In April 2010, Brothers was assigned the position of Detective. While serving in that capacity, Brothers was assigned to investigate fellow officer Daniel Daly for misconduct. On two occasions Town Manager Robert Spain spoke to Brothers, warning her that some members of the Board of Selectmen did not like her, were out to get her, and that "Some people are better friends with the selectman than they are you."

In August 2011, Bates, a member of the Worcester Police Department Internal Affairs Unit, was hired to assist Brothers in her investigation. Bates is an attorney who has conducted over 200 internal investigations, and sits on the executive board of a national investigators association. Years earlier, Brothers took a graduate course taught by Bates. She complained to Bates and school officials about how he conducted the class and thereafter, Bates was not asked to return to teach.

Brothers alleges that Bates' investigation into Daly morphed into an investigation of her. The Town also hired McGinn, a Worcester Police Officer, to assist Bates with the investigation.

On March 19, Bates scheduled an interview with Brothers. Brothers' attorney requested that Bates recuse himself due to the history between him and her. Bates denied there was a conflict and Town refused to recuse Bates.

During the investigation, Bates interviewed a number of police and civilian witnesses and subsequently destroyed the records of those interviews. He admitted that he did so without notifying any other official, but maintains that the records did not have any probative value. Brothers alleges that these records contained information capable of exonerating her of the false allegations.

The investigation into Brothers was completed in only sixteen days. In his final report, Bates found that Brothers had committed (1) untruthfulness in a police report, (2) untruthfulness in an affidavit, and (3) intimidated town residents. Bates also opined that many police departments terminate officers for such behavior because such finding "makes an officer damaged goods... [and] could jeopardize criminal cases, as well as...civil and disciplinary cases, where they must rely on that officer for corroboration." McGinn's separate report included only a single finding of harassing/intimidating town residents.

Thereafter, the Board of Selectmen voted to conduct a hearing to determine if Brothers should be terminated for (1) harassment of town residents and (2) excessive texting. Neither Bates nor McGinn included the excessive texting charge in their reports. The Town chose Attorney Janice Silverman to be the Hearing Officer. Silverman had previously worked as the head of Human Resources for the City of Worcester and knew Bates and the attorneys representing the Town. Silverman did not inform Brothers of this or offer to recuse herself.

Following the hearing, Silverman sustained both charges and recommended Brothers be terminated. The Town did not have a text message policy, and the Chief of Police testified that

Brothers texted more than some, but less than other officers. This was the first time an officer had been disciplined for excessive texting. The Board of Selectmen, including Plante, a member of the Board, unanimously voted to terminate Brothers' employment.

Brothers felt publicly humiliated by her termination and became unable to support her family financially or emotionally. She could not contribute to her retirement or apply for promotional opportunities. Brothers appealed her termination to an independent arbitrator who held that Bates and McGinn's findings were replete with error and based on flawed testimony. The arbitrator also found that "McGinn's report exhibits an incorrect grasp of the facts," and contained "misstatements [which] reflect[ed] the generally hasty and inadequate nature of the Town's investigation." The arbitrator reinstated Brothers without loss of seniority, rank, or benefits. He also awarded her back pay and other overtime opportunities. Since the ruling, Brothers has returned to work but had not, at the time she filed her complaint, been given her back pay.

### Standard of Review

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must evince the requisite factual detail to establish a *plausible* claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 68 (1st Cir. 2000). The court may consider "only facts and documents that are

part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

**Discussion**

*Count I: Procedural Due Process*

Brothers claims she was improperly terminated and not afforded adequate procedural safeguards to remedy her violated rights. More specifically, that her initial hearing was not impartial, and that the post-termination process was constitutionally inadequate because it was not timely.

As with all claims brought under 42 U.S.C. § 1983, Brothers is required to show two elements: (1) the defendant must have acted under color of state law; and (2) the defendant's conduct must have deprived the Brothers of rights secured by the Constitution or by federal law. *Rodríguez-Cirilo v. García*, 115 F.3d 50, 52 (1st Cir. 1997). Section 1983 is generally inapplicable "unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995). Both of these requirements are met here, as Defendants conceded they were acting under color of state law, and Brothers was deprived of a protected property interest, her continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539, 105 S. Ct. 1487, 1491 (1985) (holding that a public employee who could only be dismissed for cause had a property right in continued employment); *Goss v. Lopez*, 419 U.S. 565, 573 (1975) (finding that a state employee who is entitled to continued employment, absent just cause for discharge, may demand procedural safeguard of due process).

It is well-established that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the

nature of the case.'" *Loudermill*, 470 U.S. at 542 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Furthermore,"[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Brothers was put on notice of the charges against her and she received two hearings, one pre-termination and one post-termination, where she was represented by counsel and given the opportunity to present evidence. Brothers alleges, however, the procedure she was given violated her due process rights because her initial hearing was not impartial, and her appeal was not timely, taking over a year.

Courts generally do not consider pre-termination and post-termination procedures in isolation, but rather review the process in totality. *Senra v. Town of Smithfield*, 715 F.3d 34, 39 (1st Cir. 2013); *see Loudermill*, 470 U.S. at 547, n. 12 (noting that post-termination procedures are relevant to the necessary scope of pre-termination procedures); *Hadfield v. McDonough*, 407 F.3d 11, 21 (1st Cir. 2005) (finding that post-deprivation remedy was sufficient to address "any pre-deprivation of process...caused by random and unauthorized conduct by defendants"); *Cronin v. Town of Amesbury*, 81 F.3d 257, 260 (1st Cir. 1996) (finding that MA statute, which allowed employee to appeal termination and retrieve back pay, was sufficient post-deprivation remedy); *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 176-77 (D. Mass. 2013) (dismissing procedural due process claim when plaintiff alleged those involved in the pre-termination hearing had improper motives, but did not allege those involved in a post-deprivation review were similarly improperly motivated.). Here, any inadequacy in the initial hearing was remedied by Brothers' opportunity for a second hearing.

"Courts have been reluctant to declare a tardy post-deprivation remedy inadequate except in extreme cases, in recognition of the regrettable fact that 'delay is a natural concomitant of our

administrative bureaucracy.'" *Cronin,* 895 F.Supp. at 388 (quoting *Isaacs v. Bowen*, 865 F.2d 468, 477 (2nd Cir. 1989)). While it has been recognized that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation," courts have held that delays of post-termination appeals of up to two years do not violate due process. *Loudermill*, 470 U.S. at 547; *see Mathews v. Eldridge*, 424 U.S. 319, 342 (finding an 11-month delay in adjudicating post-termination appeal of disability benefits did not violate due process); *Isaacs*, 865 F.2d at 477 (19-month delay in adjudication of medical benefits appeal was not violation of due process); *Frock v. United States Railroad Retirement Bd.*, 685 F.2d 1041, 1047 (7th Cir. 1982) (2-year delay in adjudicating appeal did not violate due process). Moreover, delays are more likely to be declared unconstitutional if the tardiness of adjudication causes "grievous loss," such as putting the aggrieved party in a state of indigence. *Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970). While Brothers' appeal did last about one year, she received unemployment insurance and did not suffer any grievous financial harm from the delay. The post-termination procedure was not constitutionally inadequate merely because it lasted almost a year.

Ultimately, Brothers received notice and a meaningful opportunity to be heard. Her pre-termination and post-termination remedies, when taken in totality, did not violate her right to procedural due process. As such, Count I is dismissed as to all Defendants.

*Count II: Substantive Due Process*

In order to successfully establish a substantive due process claim, "state action must… be egregiously unacceptable, outrageous, or conscience-shocking." *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990). Importantly, "[e]ven bad-faith violations of state laws are not necessarily tantamount to unconstitutional deprivations of due process." *Id.* at 757(citing *Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 43 (1987)).

With regards to Bates, Brothers has sufficiently alleged a substantive due process violation. Bates was acting under the color of state law when he conducted his investigation into Brothers and when he destroyed the recordings of the witness testimony. This conduct could be found to be the cause in fact of the alleged deprivation of the constitutionally secured right to continued employment and to be egregious and conscience-shocking conduct.

Bates raises the affirmative defense of qualified immunity. "Because it is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, courts often evaluate qualified immunity defenses at the summary judgment stage." *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). An official is entitled to qualified immunity unless the facts that the plaintiff alleges show a violation of a constitutional right, and that right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009). When examining the second prong, courts determine whether the right was sufficiently clear that a reasonable official "would understand that what he is doing violates that right [and whether based on the facts of the particular case] a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Howe*, 596 F.3d at 52; quoting *Walden v. City of Providence, R.I.*, 596 F.3d 38, 52 (1st Cir. 2010). It is clear that the destruction of allegedly exculpatory evidence is Constitutionally infirm. Accordingly, Bates is not entitled to qualified immunity, and at this stage of the proceeding Count II will not be dismissed as to him.

Brothers has failed to allege that any conduct by McGinn and Plante was conscience-shocking. Brothers alleges only that McGinn filed a report replete with error and that Plante voted, along with his fellow Board members to hold a hearing and subsequently to adopt the

hearing officer's recommendation. Neither of these actions can be considered egregiously unacceptable. Therefore, Count II is dismissed at to McGinn and Plante.

The Town may only be liable under §1983 only if the underlying unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Servs. of City of NY*, 436 U.S. 658, 690-91 (1978). Here, there were no allegations that any official policy, custom, or ordinance was the moving force behind Bates' conduct. Brothers has, therefore, not sufficiently pleaded a *Monell* claim, and Count II is dismissed as to the Town.

*Count III: Equal Protection*

Our equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *Engquist v. Oregon Dept. of Agri.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). Brothers does not allege she was treated differently because she is a member of a particular class.

Equal protection jurisprudence also provides for a "class of one" theory, which, in some circumstances, can sustain an equal protection claim even when a plaintiff has not alleged class-based discrimination. *Enquist*, 553 U.S. at 601. This theory allows equal protection claims to be brought when a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923)). However, the Supreme Court has held the "class of one" theory does not apply in the context of public employment as there is a "crucial difference...between the government exercising 'the power to regulate...as a lawmaker,' and the government acting 'as

proprietor, to manage [its] internal operation.'" *Engquist,* 553 U.S. at 598 (quoting *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 896 (1961)). As Brothers does not allege class-based discrimination and cannot rely on the "class of one theory," there is no basis for an equal protection claim, and Count III is dismissed.

*Count IV: Massachusetts Civil Rights Act*

The Massachusetts Civil Rights Act ("MCRA") forbids interference with a person's exercise or enjoyment of rights secured by federal or state law. A claim under this act can be brought against any person, whether or not acting under the color of law, who interferes with these rights "by threats, intimidation or coercion." MGL c.12 §§ 11H. In order to establish a claim under the MCRA, a plaintiff must prove three elements: (1) that [her] rights and interests were "secured by the Constitution or laws of either the United States, or of the Commonwealth"; (2) that those rights and interests "have been interfered with, or attempted to be interfered with"; and (3) "that the interference, or attempted interference, was done through threats, intimidation, or coercion." *Swanset Dev. Corp. v. Taunton*, 423 Mass. 390, 395 (1996). A municipality is not a 'person' under the MCRA, which precludes the Town's liability. *Rinsky v. Trustees of Boston Univ.*, 2010 WL 5437289, *7 (D. Mass. 2010).

With regard to the remaining Defendants, the survival of the claim hinges on the third element which requires that the interference be done by threat, intimidation, or coercion. In the context of the MCRA, "'threat' involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994). "Intimidation" is the act of compelling or deterring conduct through fear. *Id*. Finally, "coercion" is the application of physical or moral force to constrain a person to do something against his will, which he or she would not have otherwise done. *Id.*

Brothers claims she was subject to "economic coercion," because she was threatened with the loss of her livelihood. In *Buster v. George W. Mason, Inc.*, the court held that "economic coercion alone may constitute 'threats, intimidation or coercion' in violation of the act." 438 Mass. 635, 637 (2003). The determinative question is whether the Defendants attempted to coerce Brothers into doing something against her will. *Rinsky*, 2010 WL 5437289, *8 ("The Court must evaluate whether a reasonable person in that situation would have felt threatened, coerced, or forced."). Here, Brothers' complaint fails to allege that Defendants actions were an attempt to threaten Brothers or compel her to change her behavior. Therefore, Count IV is dismissed as to all Defendants.

*Count V: Breach of Contract*

Brothers asserts that because she was terminated without just cause, as laid out under the Millbury Police Association's CBA, her discharge was a breach of contract. "To prevail on a claim of breach of contract, a plaintiff must allege 'that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage.'" *Tonneson v. Cambridge College*, 2011 WL 3798874, *2 (D. Mass. 2011) (citing *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 351 (D. Mass. 2011)). Moreover,"[o]ral and written representations made by an employer that amount to a promise of permanent employment or employment terminable only for just cause are enforceable in Massachusetts." *Boothy v. Texon, Inc.*, 414 Mass. 468 (1993).

Brothers did not have any contractual agreement with Plante, who is the Chair of the Board of Selectmen. Count V is therefore dismissed as to Plante.

Brothers' complaint alleges that she was discharged without just cause. Taken as true, this amounts to a breach of the contractual agreement on the part of the Town as the CBA was a

contractual agreement, it was breached by the Town as it only allows for termination for just cause, and the breach caused the plaintiff damage—specifically, financial loss.

The Town argues res judicata precludes this claim against it, specifically that Brothers litigated her breach of contract and breach of good faith and fair dealing claims through the arbitration process that ultimately led to her reinstatement. Res judicata, or claim preclusion, is applicable to arbitration proceedings. *Beals v. Commercial Union Ins. Co*., 61 Mass. App. Ct. 189, 193 (2004). "Three elements are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits. *DaLuz v. Dep't of Correction*, 434 Mass. 40, 45 (2001). The elements are met here. As in the arbitration proceeding, Brothers and the Town are the parties to this claim. The issue presented in the arbitration, as in this count, was "Did the Town violate Article 7 of the contract by discharging the grievant without just cause? If so, what shall be the remedy?" Finally, as Brothers notes in her complaint, there was a final judgment in favor of Brothers which resulted in Brothers being reinstated with no loss of seniority, rank, or benefits, and the Town being ordered to make Brothers whole for lost wages, overtime opportunities, and paid details she would have enjoyed. Brothers has thus already had the opportunity to, and successfully did, litigate the breach of contract claim against the Town. As such Count V is dismissed.

*Count VI: Breach of Good Faith and Fair Dealing*

The covenant of good faith is generally implied in written employment contracts. *Williams v. B&K Medical Systems, Inc.*, 49 Mass. App. Ct. 563, 569 (2000). It requires "that neither party [does] anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* The allegations put forth by Brothers,

specifically that the investigation was improperly carried out and the termination was unwarranted allow inferences to be drawn that the Town breached that her employment contract without just cause and with bad faith. As noted above, however, Plante was not a party to the employment contract and therefore cannot be liable for any breach of good faith regarding it.

The Town again raises res judicata as to this claim. The burden is on the defendants raising the defense to establish res judicata. *SBT Holdings, LLC v. Town Of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Id*. (quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir.2004)). The Town has failed to establish facts showing Brothers did, or could have litigated her breach of good faith and fair dealing claim at the aforementioned arbitration. The Town therefore has not established there has been a final adjudication on the merits for this cause of action.

Count VI is, therefore, dismissed as to Plante but not the Town.

*Count VII: Civil Conspiracy*

Brothers alleges that the Defendants acted under a common design or agreement to wrongfully investigate and terminate Brothers. There are two types of civil conspiracy: a coercive type and a concerted action type. *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994). Brothers' complaint focuses on the concerted action type of conspiracy, which involves concerted actions of defendants where there is a "common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Id.* at 1564. A

conspiratorial agreement may be "inferred from words, actions, and the interdependence of activities and persons involved." *Id.* at 1562; *see Hunt v. Weatherbee*, 626 F.Supp. 1097, 1007 (D. Mass. 1986). A person may be liable if he "knows that the conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other." *Kurker v. Hill*, 44 Mass. App. Ct. 184, 189 (1998); *Nelson v. Nason*, 343 Mass. 220, 222 (1961) (recovery allowed under concerted action theory of § 876(b) where defendant's conduct caused another to engage in tortious activity).

Based on Brothers' allegations, including the alleged hasty and inaccurate investigation and reports by Bates and McGinn, the destruction of testimony, the Town Manager's repeated warnings, the excessive texting charge, and the independent arbitrator's ultimate vindication, it is at least plausible that McGinn, Bates, and the Town were acting under a common design to wrongfully terminate Brothers, thus depriving her of her Constitutionally protected property right in continued employment. Brothers' complaint however contains no allegations of facts sufficient to show Plante was involved. Moreover, the claim must be dismissed against the town, as a municipality cannot be charged with conspiring with its employees because that would amount to the municipality conspiring with itself. *Felix v. Town of Randolph*, 2013 WL 3830840 *4 (D. Mass.). Accordingly, Count VII will be dismissed as to Plante and the Town, but not as to Bates and McGinn.

*Count VIII: Intentional Infliction of Emotional Distress*

The Massachusetts Tort Claims Act ("MTCA") preserves a municipality's immunity against "any claim arising out of an intentional tort, including assault, battery…intentional mental distress, malicious prosecution…interference with advantageous relations or interference with contractual relations." *Felix*, 2013 WL 383040 at *4 (citing M.G.L. c. 258, § 10(c)).

Brothers is therefore precluded from bringing claims against the Town for intentional infliction of emotional distress, malicious prosecution, and interference with advantageous relations. *Id.* at *5.

With regard to the remaining Defendants, to prove her claim of intentional infliction of emotional distress, Brothers must show that their conduct was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized society. *Limone v. United States*, 497 F.Supp.2d 143 (D. Mass. 2007); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). Brothers fails to allege any behavior by Plante that meets this threshold. Brothers has however alleged that McGinn and Bates conduct a hasty investigation and produced reports full of false statements, and that Bates destroyed exculpatory evidence. While the extreme and outrageous standard is a difficult one to meet, "the jury is ordinarily in a better position... to determine whether outrageous conduct results in mental distress," and in this case the Court finds it may be more appropriate for a jury to decide whether the McGinn and Bates' conduct amounted to the extreme and outrageous threshold. *Agis*, 371 Mass. at 144 (quoting *State Rubbish Collectors Ass'n v. Siliznoff*, 240 P.2d 282, 286 (Cal. 1952)).

The Defendants argue that intentional infliction of emotional distress is barred under M.G.L. c. 41 § 111F. However, that statute bars claims from police officers who are injured in the performance of duty. Brothers was not injured in the performance of her duties. Moreover, the prohibition of claims extends to "mental and nervous disorders that are the result of physical trauma." *Id.* Brothers' emotional distress was not a result of any physical trauma. This argument is inapplicable to Brothers' claim.

Count VIII is therefore dismissed as to the Town and Plante, but not as to McGinn and Bates.

*Count IX: Malicious Prosecution*

To prove a claim of malicious prosecution, a plaintiff must show the "institution of criminal or civil proceedings with improper purpose, without probable cause, and with termination of the proceedings in the plaintiff's favor." *Chervin v. Traveler's Ins. Co.*, 448 Mass. 95, 102-10 (2006). Also, the plaintiff must show actual malice. *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). The MTCA precludes the Town's liability, as discussed above.

Brothers has not sufficiently alleged a malicious prosecution claim against Plante. Nothing in the complaint suggests Plante was responsible for instituting the proceedings against Brothers or that he acted with malice. Brothers only alleges that the decision to conduct a termination hearing was made through a vote of the Board of Selectmen; Plante is but one member of this Board. Count IX is therefore dismissed.

*Count X: Interference with Advantageous Relations*

Brothers alleges that Defendants' improper conduct interfered with her advantageous contractual relations, resulting in her inability to seek and secure promotional opportunities. Again, the claim against the Town is dismissed based on the MTCA.

In order to establish a claim of interference with advantageous relations, Brothers must prove that she had an advantageous relationship with a third party, the defendant knowingly induced a breaking of this relationship through intentional and improper interference, and that she suffered harm. *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007). Officials acting "within the scope of their employment responsibilities are privileged to act [unless they do so] out of malevolence…with actual malice." *Id.* (internal citations omitted). If an official acts with actual malice, that is with a "spiteful, malignant purpose, which is unrelated to a legitimate corporate interest," then that could sufficiently support a tortious interference claim. *Blackstone*, 448

Mass. at 261; *O'Brien v. New Eng. Tel. & Tel. Co.*, 422 Mass. 686, 690 (1996) (upholding intentional interference verdict, finding that "the jury were warranted in finding that Hurley's conduct exceeded his rightful role as O'Brien's supervisor and was prompted by his resentment of O'Brien's successful challenges to his decisions and her refusal to transfer out of his department."); *Mailhiot v. Liberty Mut. Bank & Trust Co.*, 24 Mass. App. Ct. 525, 527 (1987) (finding fabrications regarding the reason for employee's discharge evidenced malice and could support charge of tortuous interference with an employment relationship).  Here, Brothers alleges McGinn and Bates conducted a "twisted investigation," made false charges, and that Bates destroyed evidence. These allegations are sufficient to show conduct done with the malicious intent to interfere with an advantageous relationship with her employer. Brothers has, again, failed to sufficiently allege Plante acted with malice: the complaint only alleges he voted with the majority of the Board of Selectmen. Count X is therefore dismissed as to the Town and Plante, but not as to Bates and McGinn.

*Count XI: Wrongful Discharge in Violation of Public Policy*

Brothers alleges that she was disciplined and terminated while investigating the "illegal wrongdoings of her co-worker, Daniel Daly." It is well-established that such a claim is barred for employees covered by a collective bargaining agreement.  *Acciavatti v. Professional Servs. Group, Inc.*, 982 F.Supp. 69, 74-75 (D. Mass. 1997) (citing *Cullen v. E.H. Friedrich Co., Inc.*, 910 F.Supp. 815, 821 (D. Mass. 1995)).  In *Acciavatti*, the plaintiff, who was subject to a CBA which required discharge only for just cause, was not able to bring a claim of wrongful discharge.  *Id.* at 74-75.  Because the plaintiff was able to file a grievance through the arbitration process, the court found the wrongful discharge claim to be unviable.  *Id.*  Similarly, Brothers was a permanent employee under a CBA and was able to file for appeal with an independent

arbitrator.  Therefore, she is barred from bringing a claim of wrongful discharge in violation of public policy, and Count XI is dismissed.

*Count XII: Negligent Hiring, Supervision, and Retention of Employees*

Brothers claims the Town of Millbury and Plante negligently hired, supervised, and retained Bates and McGinn as special investigators despite knowing about Bates' history with Brothers and about McGinn being involved in a previous investigation in Ashland which was improperly conducted.

Under the MTCA, public employees are immune for acts of negligence committed within the scope of their employment.  M.G.L. c. 258 § 2.  The statute expressly states that "no such public employee…shall be liable for any injury or loss of property…caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." *Id.*  Thus, the claim is dismissed against Plante, who was acting within the scope of his employment when the Board of Selectmen employed Bates and McGinn to assist in the Town's internal investigations.  The statute instead places liability with the public employer.

However, "[e]xempted from liability...are claims 'based upon the exercise or performance...[of] a discretionary function or duty on the part of public employer... acting within the scope of [its] office, whether or not the discretion involved is abused.'" *Sena v. Commonwealth*, 417 Mass. 250, 255 (1994) (quoting M.G.L. c. 258 § 10(b)).  There is a two-step analysis to apply the discretionary function: first, did the government actor have any discretion as to what course of conduct to follow; and second, was the discretion the actor had the type of discretion for which § 10(b) provides immunity.  *Greenwood v. Town of Easton*, 444 Mass. 467, 469-70 (2005).  "The discretionary function exception is narrow, providing immunity only for

discretionary conduct that involves policy making or planning." *Id*. at 470 (internal citations omitted).

Here, it is clear the Town had discretion as to whether it would hire outside investigators and which investigators it would hire. What is not clear at this juncture is whether this is the type of discretion for which 10(b) provides immunity. "Deciding whether particular discretionary acts involve policy making or planning depends on the specific facts of each case." *Greenwood*, 444 Mass. at 470. At this stage, the facts have not been developed fully enough for this Court to rule that, as a matter of law, the Town is immune from liability under the 10(b) exception. Therefore Count XII is dismissed as to Plante, but not as to the Town.

*Count XIII: Defamation*

Finally, Brothers brings a claim of defamation, asserting that the Defendants made public and other published statements which were false and defamatory, and made with disregard for their falsity. Specifically, she points to the statements Bates and McGinn made in their reports, and the fact that the Board of Selectmen charged Brothers with excessive texting.

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 442 Mass. 64, 66 (2004). Brothers has made out a case as to Bates and McGinn, pointing to a number of statements in their respective reports which she alleges are false, which disparaged her conduct as a police officer, and which could have, and likely did lead to her termination.

Defendants Bates and McGinn raise an affirmative defense of qualified immunity that attaches to comments made during police investigations. *Dear v. Devaney*, 83 Mass.App.Ct.

285, 292-93 (2013). It is well-established that statements made during a police investigation do not have absolute privilege but do enjoy qualified privilege. *Id.* at 246; *Seelig v. Harvard Co-op. Soc.*, 355 Mass. 532 (1969). However, despite the qualified privilege, "the plaintiff has the right, notwithstanding the privileged character of the communication, to go to the jury, if there be evidence tending to show actual malice." *Seelig*, at 646 (citing *Dale v. Harris*, 109 Mass. 193, 196 (1872)). Here, the allegation that Bates and McGinn were aware that these reports could lead to termination, and indeed were made to facilitate such termination, along with the destruction of witness testimony, is enough to find Bates and McGinn acted with actual malice such that Bates and McGinn are not entitled to qualified immunity. Accordingly, the defamation claim against Bates and McGinn is not dismissed.

However, there are no allegations that the Town or Plante made any statements at all. Brothers points to the Board of Selectmen voting to conduct a hearing for termination based on the charge of excessive texting, however, this is not a statement, nor can it be attributed to the Town or Plante. The defamation claim is dismissed therefore against the Town and Plante.

*Common Law Immunity in Tort*

The Defendants raise a common law immunity defense which protects public officials from liability when exercising discretion within the scope of their duties. *Gildea v. Ellershaw*, 363 Mass. 800 (1973). This immunity only extends to public officials who are "acting with good faith, without malice and without corruption." *Id.* at 859. Bad faith has been defined to suggest a "breach of a known duty through some motive of interest or ill will." *Spiegel v. Beacon Participations*, 297 Mass. 398, 416 (1937). "Malice means a wrongful act, done intentionally, without just cause or excuse." *McGurk v. Cronenwett*, 199 Mass. 398, 416 (1937). Based on the allegations of the hasty investigation, untruthful reports, and the destruction of evidence, and

the ostensible collusion, it can be reasonably inferred that Bates and McGinn acted with malice. Furthermore, despite these actions taking place during work hours, Brothers alleges they were fueled by personal animosity and retaliatory motives that extend beyond the scope of these Defendants' employment. Therefore, Bates and McGinn are not entitled to common law immunity.

**<u>Conclusion</u>**

Overall, the Defendants' motions to dismiss are ***<u>granted</u>*** in part and ***<u>denied</u>*** in part. The claims for Procedural Due Process (Count I), Equal Protection (Count III), MCRA (Count IV), Breach of Contract (Count V), The Malicious Prosecution claim (Count IX), and Wrongful Discharge in Violation of Public Policy (Count XI) are dismissed as to all applicable Defendants. The Substantive Due Process (Count II) claim is dismissed for the Town, Plante, and McGinn, but not as to Bates. The claims for the Violation of Good Faith and Fair Dealing (Count VI) and Negligent Hiring (Count XII) are dismissed as to Plante, but not against the Town. Finally, the claims for Civil Conspiracy (Count VII), Intentional Infliction of Emotional Distress (Count VIII), Interference with Advantageous Relations (Count X), and Defamation (Count XIII) are dismissed against the Town and Plante, but not against Bates and McGinn.

SO ORDERED.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE